IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRICIA SCHAFFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 09-3229-CV-S-GAF-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff, Patricia Schaffer, filed an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff's application was denied. On March 19, 2009, following a hearing, an administrative law judge ("ALJ") rendered a decision in which he found that Plaintiff was not under a "disability" as defined in the Social Security Act at any time from September 19, 2006, the date Plaintiff filed her application, through the date of the decision. On May 20, 2009, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

In his decision, the ALJ determined that Plaintiff had medically determinable myofascial syndrome, depression, anxiety, obsessive-compulsive disorder (OCD), and migraines. After considering the record as a whole, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments.

The standard of review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. ***See Finch v. Astrue***, **547 F.3d 933, 935 (8th Cir. 2008).** Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support the Commissioner's conclusion. ***See Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)**. Evidence that both supports and detracts from the Commissioner's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. ***See Finch*, 547 F.3d at 935 (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004))**. A court should disturb the ALJ's decision only if it falls outside the available "zone of choice" and a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the court been the fact finder in the first instance. ***See Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citations omitted)**. The Eighth Circuit has further noted that a court should "defer heavily to the findings and conclusions

of the SSA." ***Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).**

To establish entitlement to disability benefits, Plaintiff must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. See 20 C.F.R. § 416.905. The Supreme Court in ***Barnhart v. Walton*, 535 U.S. 212 (2002)**, upheld the Commissioner's

2

interpretation of this statutory definition which requires that the disability, and not only the impairment, must have existed or be expected to exist for 12 months.[1]

After considering the evidence herein, the ALJ found that Plaintiff had no severe impairment or combination of impairments and therefore was not disabled under the Act. Plaintiff argues that the ALJ should have found her myofascial syndrome, migraines, irritable bowel syndrome, carpal tunnel syndrome, depression, anxiety, and OCD severe. The ALJ determined that none of these conditions were severe for 12 consecutive months, as required by the Act.

Plaintiff initially alleged that her disability began on January 1, 1999, at age 23. At the administrative hearing, however, Plaintiff amended her alleged onset date of disability to September 19, 2006.  September 19, 2006, is the same date as Plaintiff's protective filing date for SSI benefits. For purposes of obtaining SSI benefits under Title XVI, a claimant must show that she was disabled during the time her application was pending. See 20 C.F.R. §§ 416.330 and 416.335.

An impairment is non-severe when it "does not significantly limit" a person's "physical or mental ability to do basic work activities," which means it has "no more than a minimal effect" on a person's ability to work even if one considered that person's age, education, or work experience. See 20 C.F.R. § 416.921(a); Social Security Ruling (SSR) 85-28. The regulations define "basic work activities" as those "abilities and aptitudes necessary to do most jobs." See 20

---

[1]Upon review of the record and the law, the Defendant's position is found to be persuasive.  Much of the Defendant's brief is adopted without quotation designated.

C.F.R. § 416.921(b). The claimant has the burden of proving that her impairment or combination of impairments is severe. *See Kirby v. Astrue*, **500 F.3d 705, 707 (8th Cir. 2007)**. It is not particularly difficult to meet this standard, but the standard is not "toothless." *See id.* **at 708.**

Substantial medical evidence of record supports the ALJ's determination that Plaintiff's myofascial syndrome was medically determinable but not severe. In December 2004, Dr. Anne Winkler, M.D., noted Plaintiff had a negative straight leg raise test and "good range of motion of all her joints." Dr. Winkler felt Plaintiff had "symptoms suggestive of myofascial syndrome," a condition she described as "generally milder and more regional" than fibromyalgia. In August 2006, Dr. Larry Carey, M.D., noted that Plaintiff's back pain was controlled. The medical evidence of record after Plaintiff's alleged onset date of disability reveals few complaints of back pain or the type of pain associated with myofascial syndrome. Plaintiff contends that the ALJ never discussed her myofascial syndrome or explained why he decided the syndrome was non-severe. However, the ALJ specifically noted that Dr. Carey diagnosed Plaintiff with controlled back pain about three weeks before Plaintiff's alleged onset date of disability. *See Kelley v. Callahan*, **133 F.3d 583, 589 (8th Cir. 1998)**. Given that Plaintiff's back pain was controlled and that the medical evidence of record does not otherwise show severe myofascial syndrome, the ALJ did not err in this finding.

Substantial evidence also supports the ALJ's finding that Plaintiff had medically determinable but non-severe migraines. Plaintiff contends that the ALJ disregarded her headaches with one reference to a treatment note. However, the ALJ noted that in August 2006, Dr. Carey diagnosed Plaintiff with controlled migraines. He also properly noted that in January 2008, Dr. Carey diagnosed Plaintiff with improved headaches. Plaintiff cites many treatment

4

records before her alleged onset date of disability, as amended at her administrative hearing, to support her claim that her migraines were severe. However, the evidence during the relevant time period does not reveal persistently severe headaches.

While Plaintiff did occasionally experience more severe and frequent headaches, none of these periods lasted 12 months or longer. In May 2007, Dr. Carey noted that Plaintiff's headaches were "doing much better." While Plaintiff went to the emergency room with a headache in August 2007 and complained about continued problems with headaches in November 2007, Dr. Carey noted in January 2008, that Plaintiff's headaches had "been doing much better overall." In March 2008, Dr. Carey reported that while Plaintiff complained of more frequent headaches, they had not been bad enough to take Darvocet except on "only a couple of occasions." While Plaintiff arrived at an urgent care clinic with a headache in October 2008, an MRI of her brain in November 2008 revealed "[n]o appreciable disease." The ALJ's determination that Plaintiff's migraines were not severe is supported by substantial evidence in the record.

The ALJ also properly failed to note Plaintiff's irritable bowel syndrome as medically determinable. The statutory requirement that plaintiff must prove the existence of a medically determinable impairment is explained in the Commissioner's regulation at 20 C.F.R. § 416.929(b):

> *Need for medically determinable impairment that could reasonably be expected to produce your symptoms, such as pain.* Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basis work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present. Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.

*Id*. Thus, the determination of whether or not a medically determinable impairment exists is based upon the objective evidence of record. Only after a claimant proves the existence of such

6

impairment will the adjudicator proceed to evaluate the individual's subjective complaints at step two based upon all the evidence of record as a whole. See 20 C.F.R. § 416.929(c). Here, there is little evidence to support a finding of medically determinable irritable bowel syndrome. Plaintiff did not claim disability due to irritable bowel syndrome. ***See Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996)**. In addition, Plaintiff did not mention problems due to irritable bowel syndrome at her administrative hearing. The only evidence during the relevant time period that relates to irritable bowel syndrome concerns an appointment with Dr. Carey in March 2008. Dr. Carey did not even include irritable bowel syndrome as one of Plaintiff's diagnoses at that visit. He mentioned that Plaintiff had a "flare of the irritable bowel" and that he gave her a medication for it that had "worked well in the past." Due to the limited evidence regarding irritable bowel syndrome during the relevant time period, the ALJ did not err in finding the syndrome not medically determinable.

The ALJ's finding that Plaintiff's carpal tunnel syndrome was not medically determinable is also supported by substantial evidence. Plaintiff did not claim disability due to carpal tunnel syndrome. ***See Wilson*, 76 F.3d at 241.** In May 2007, Dr. Carey noted that Plaintiff possibly had carpal tunnel syndrome. Dr. Carey noted that Plaintiff wanted to wait to do nerve conduction studies. In November 2007, Dr. Carey diagnosed Plaintiff with "[m]ild carpal tunnel on the right. Plaintiff decided against surgery, and Dr. Carey prescribed a brace. There is no record of any nerve conduction studies in the medical evidence of record. Based on the limited clinical evidence and the lack of objective medical evidence, the ALJ did not err in finding Plaintiff's carpal tunnel syndrome not medically determinable.

The ALJ also properly determined that Plaintiff had medically determinable but nonsevere depression, anxiety, and OCD. The medical evidence of record reveals no psychiatric hospitalizations. In January 2007, Dr. Murrell, Psy.D., diagnosed Plaintiff with malingering and opined that Plaintiff "overstated her condition." He also noted that Plaintiff did not "appear to be depressed during the interview."[2]

In addition, as the ALJ correctly noted, many of Plaintiff's mental problems appeared to be situational. Plaintiff testified at the administrative hearing that she experienced psychological symptoms due to problems with her daughter and husband. ***See Dunahoo v. Apfel*, 241 F.3d 1033, 1039-1040 (8th Cir. 2001).** In her treatment notes, Dr. Mari Hayes, Ph.D., L.P., appeared to focus on situational stressors, and she rarely gave detailed descriptions of Plaintiff's mental state. In January 2008, Dr. Carey opined that "at this time [Plaintiff] probably [was] not employable with the multiple stressors and the present requirements on her time in terms of hearings, etc." Dr. Carey's opinion suggests that any work-related problems Plaintiff may have had stemmed from issues other than her impairments. See 20 C.F.R. § 416.905.

In addition, Plaintiff's treatment providers did not consistently note serious psychiatric symptoms during the relevant time period. In September 2007, Dr. Carey noted that Plaintiff's

---

[2]An actual diagnosis of malingering means that in the doctor's opinion, Plaintiff was feigning illness. This is substantial evidence to support the ALJ's denial decision. "An ALJ may discount a social security disability claimant's subjective complaints if there is evidence that a claimant was a malingerer or was exaggerating symptoms for financial gain." ***Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)** (medical evidence showed that claimant was malingering during psychological examinations) (citation omitted); ***Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003)** ("Although Ms. Osborne's score on the Beck Depression Inventory was admittedly within the range of depression, both the examiner who administered the Inventory and consulting psychiatrist Smith believed Ms. Osborne functioned at a much higher level than the score would indicate. In fact, Dr. Smith went so far as to label Ms. Osborne a malingerer.").

depression had improved, and in November 2007, Dr. Carey diagnosed Plaintiff with stable depression. In September and October 2008, Dr. Carey diagnosed Plaintiff with dysthymic disorder rather than depression, which suggests that he felt Plaintiff's symptoms were not very severe.[3] *See Howard,* **255 F.3d at 582.** There is substantial evidence of record in support of he ALJ's finding that Plaintiff had no limitation in activities of daily living; mild limitations in social functioning; mild limitations in concentration, persistence, or pace; and no episodes of decompensation.

The record further reflects that Plaintiff did not appear to be limited in her daily activities by her mental impairments. In her function report, Plaintiff reported caring for her two children, caring for herself, preparing meals, driving, shopping, using a computer, and taking her daughter to school and picking her up at the end of the day. These activities, particularly caring for young children, show that Plaintiff's mental impairments did not limit her daily activities. ***See Brown v. Barnhart*, 390 F.3d 535, 541 (8th Cir. 2004);** *Pena v. Chater***, 76 F.3d 906, 908 (8th Cir. 1996).**

Plaintiff's social functioning was only mildly impaired. Plaintiff appeared to interact well with all of her treatment providers. While Plaintiff reported difficulty going outside and not being able to go to a job interview, she was able to attend appointments with her treatment providers. In addition, Mr. James Carpenter, M.S., opined that Plaintiff was not significantly

---

[3] Dysthymic disorder "is characterized by chronic, less severe depressive symptoms that have been present for many years." *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 348 (4th ed. 1994).

limited in any area related to social interaction. Substantial evidence supports the ALJ's finding of mild limitations in social functioning.

The ALJ also determined that Plaintiff had mild limitations in concentration, persistence, or pace. Dr. Murrell noted that Plaintiff was able to concentrate while taking the MMPI-2 and did not need a break during the 45 minutes she took to complete the test. He indicated that Plaintiff successfully followed written instructions.  Dr. Murrell noted that "[i]t would appear that [Plaintiff] was capable of attending to work related tasks that would be found in a typical work environment."  Substantial evidence supports the ALJ's finding of mild limitations in concentration, persistence, or pace.

The ALJ discussed the medical evidence of record regarding Plaintiff's impairments. The ALJ found that Plaintiff's irritable bowel syndrome and carpal tunnel syndrome were not medically determinable while Plaintiff's myofascial syndrome, migraines, depression, anxiety, and OCD were medically determinable but non-severe. Substantial evidence supports the ALJ's finding that Plaintiff did not have a severe impairment or combination of impairments.

Plaintiff argues that the ALJ ignored her testimony. However, the ALJ properly described and evaluated Plaintiff's subjective complaints.  After evaluating the evidence, the ALJ determined that Plaintiff's statements regarding the severity of her symptoms were not credible to the extent they were inconsistent with the finding that Plaintiff had no severe impairment or combination of impairments. Substantial evidence supports this decision, as several factors detracted from the credibility of Plaintiff's subjective allegations. These factors include inconsistencies with the medical evidence, Plaintiff's daily activities, and her work history.

Credibility questions concerning a Plaintiff's subjective testimony are "primarily for the

ALJ to decide, not the courts." *See Baldwin v. Barnhart*, **349 F.3d 549, 558 (8th Cir. 2003)**. To analyze a claimant's subjective complaints of pain, the ALJ must consider the entire record including the medical records, third party and Plaintiff's statements, as well as such factors as: 1) the claimant's daily activities; 2) the duration, frequency and intensity of pain; 3) dosage, effectiveness, and side effects of medication; 4) precipitating and aggravating factors; and 5) functional restrictions. See 20 C.F.R. § 416.929; *Polaski v. Heckler*, **739 F.2d 1320, 1322 (8th Cir. 1984)**. When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for this finding, the court usually will defer to the ALJ's finding. *See Casey v. Astrue*, **503 F.3d 687, 696 (8th Cir. 2007) (citing *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003)).**

Plaintiff contends that the ALJ improperly relied on Dr. Murrell's report in finding that her statements were not fully credible. However, Dr. Murrell conducted a thorough examination of Plaintiff, including a detailed mental status examination. The ALJ correctly considered Dr. Murrell's examination in his credibility assessment.

Plaintiff argues that Dr. Murrell's report was internally inconsistent. However, Dr. Murrell explained his findings, which were consistent. He explained how he arrived at the diagnosis of malingering by noting that the MMPI-2 results indicated a diagnosis of malingering. While he assigned Plaintiff a Global Assessment of Functioning (GAF) score of 55,[4] that score was not inconsistent with his report because he did find that Plaintiff displayed dependent traits,

---

[4] The Diagnostic and Statistical Manual of Mental Disorders (DSM) explains that a GAF score between 51 and 60 means that a person has "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning." See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000).

and because the GAF score can include many factors unrelated to SSA disability. In fact, the Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings." See 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (August 21, 2000). In addition, a GAF score of 55 does not indicate the presence of serious psychiatric symptoms. *See Goff v. Barnhart*, **421 F.3d 785, 791 (8th Cir. 2005).** Dr. Murrell's report was internally consistent.

Plaintiff also argues that Dr. Murrell's report was inconsistent with the treatment notes of Mr. Carpenter and Dr. Hayes. Initially, it is important to note that Mr. Carpenter did not examine Plaintiff during the relevant time period, but his notes show that Plaintiff stopped cutting herself and appeared to improve during treatment with him. In February 2005, Mr. Carpenter noted that Plaintiff was "very happy." Dr. Hayes did not include detailed descriptions of Plaintiff's symptoms in her treatment notes but instead focused on describing Plaintiff's situational stressors. Considering the limited evidence regarding Plaintiff's mental problems from other sources, it was not improper for the ALJ to rely on Dr. Murrell's more detailed report.

As discussed above, Plaintiff also engaged in a variety of daily activities that detracted from the credibility of her subjective allegations. *See Johnson v. Apfel*, **240 F.3d 1145, 1148 (8th Cir. 2001).** Plaintiff argues that the ALJ failed to note that her husband helped her perform some of these activities. However, Plaintiff reported that she did "everything" for the baby while her husband was at work. Plaintiff's ability to function as a baby's sole caretaker during the day is inconsistent with her allegations of disability. *See Brown*, **390 F.3d at 541;** *Pena,* **76 F.3d at 908.** Plaintiff also contends that she reported preparing only very simple meals.

12

However, the ALJ did not rely solely on Plaintiff's report of preparing meals in assessing her activities of daily living; he discussed several activities and noted that they had "at least at times, been somewhat greater than the claimant has generally reported and alleged."

Plaintiff's work history also detracted from the credibility of her subjective allegations. The ALJ correctly noted that Plaintiff had "a sporadic work history with no substantial earnings." *See Comstock v. Chater*, **91 F.3d 1143, 1147 (8th Cir. 1996)**. In addition, the evidence suggests that Plaintiff looked for work during the relevant time period. *See Mitchell v. Sullivan*, **907 F.2d 843, 844 (8th Cir. 1990)**. Plaintiff argues that her work history does not reveal substantial earnings due to her young age, her attempts to attend community college classes, and her impairments. However, other evidence suggests that Plaintiff had low earnings and a sporadic work history because she felt she was unable to work for reasons unrelated to her impairments. In May 2008, Dr. Hayes noted that Plaintiff wanted to work but did not believe "that there [was] room for an assertive woman in the job market." Dr. Hayes felt that these "long held beliefs about why she [could not] work" kept Plaintiff "anxious and stuck." The ALJ properly considered Plaintiff's work history in assessing the credibility of her subjective allegations.

The ALJ explicitly found that Plaintiff's statements regarding the severity of her symptoms were not credible to the extent they were inconsistent with the finding that Plaintiff had no severe impairment or combination of impairments. The ALJ found that the medical evidence, Plaintiff's daily activities, and her work history all constituted good reasons for doubting the credibility of Plaintiff's subjective allegations. *See Casey*, **503 F.3d at 696 (citing Gregg, 354 F.3d at 714).**

Plaintiff argues that the ALJ erred by failing to give controlling weight to the opinion of her psychologist, Dr. Hayes. In this regard, the ALJ declined to give Dr. Hayes's opinion controlling weight, finding her opinion inconsistent with her own treatment notes. Social Security Ruling (SSR) 96-2p directs an ALJ to give controlling weight to a source's opinion when it has met these four tests: (1) the opinion comes from a treating source; (2) the opinion is a medical opinion about "the nature and severity" of the claimant's impairments; (3) the opinion is "'well-supported' by 'medically acceptable' clinical and laboratory diagnostic techniques"; and (4) the opinion is "'not inconsistent'" with other "'substantial evidence'" in the record. See also 20 C.F.R. § 416.927(d)(2). Dr. Hayes was a treating source and did give a medical opinion, but that opinion was inconsistent with her treatment notes and other medical evidence.

Dr. Hayes's treatment notes did not include detailed descriptions of Plaintiff's symptoms that would support her opinion. Dr. Hayes described Plaintiff's situational stressors in detail, but she offered few clinical findings. For example, in December 2007, Dr. Hayes noted that Plaintiff had a depressed and anxious mood but "fair" overall functioning. In June 2008, Dr. Hayes noted that Plaintiff had "[s]ome improvements in mood and management of mood." These notes do not include the type of detail needed to support the mental limitations she assigned Plaintiff. Dr. Hayes often listed Plaintiff's clinical status as anxious, depressed, or concerned, but then included no specific detail about Plaintiff's particular mental state. These short descriptions do not support the extreme mental limitations she opined Plaintiff had.

Other medical evidence also fails to support Dr. Hayes's opinion that Plaintiff suffered from extreme mental limitations. Dr. Murrell observed Plaintiff following written directions and concentrating for 45 minutes while taking a test. He also noted that "[i]t would appear that

14

[Plaintiff] was capable of attending to work related tasks that would be found in a typical work environment." Dr. Carey noted improvement in Plaintiff's depression and eventually diagnosed her with dysthmyic disorder rather than depression. Plaintiff contends that Mr. Carpenter's treatment notes support Dr. Hayes's opinion. However, Mr. Carpenter's treatment notes revealed that Plaintiff made significant progress. Plaintiff stopped cutting herself and eventually discussed a full-time job for which she was applying. ***See Mitchell*, 907 F.2d at 844.** In February 2005, Mr. Carpenter noted that Plaintiff was "very happy." This medical evidence is inconsistent with Dr. Hayes's opinion that Plaintiff was extremely or markedly limited in several areas.

Plaintiff argues that the ALJ improperly evaluated Mr. Carpenter's opinion. The ALJ considered Mr. Carpenter's opinion as the opinion of an "other source." See 20 C.F.R. §416.913(d); SSR 06-03p. Because Mr. Carpenter never saw Plaintiff during the relevant time period, the ALJ did not need to discuss his opinion in detail. However, the ALJ did offer some explanation of how he evaluated Mr. Carpenter's opinion. The ALJ noted that in a letter Mr. Carpenter opined that most of Plaintiff's anxiety related "to testing and the classroom environment." Plaintiff argues that the ALJ placed too much emphasis on this statement and ignored other evidence from Mr. Carpenter. However, the ALJ specifically acknowledged that Mr. Carpenter also noted in the letter that Plaintiff had depression, panic disorder, and severe generalized anxiety disorder. Mr. Carpenter's purpose in writing the letter was to assist Plaintiff in obtaining support from the college's disability services office and in this regard the classroom environment significantly differs from many work environments. The ALJ's evaluation of Mr. Carpenter's opinion was not improper.

Plaintiff also contends that the ALJ should have evaluated the opinions of Dr. Hayes and Mr. Carpenter under 20 C.F.R. § 416.927(d). Under 20 C.F.R. § 416.927(d), the ALJ considers the length of the relationship between the claimant and the treating source, the frequency of exams the claimant has had with the treating source, the nature and extent of claimant's relationship with the treating source, the evidence the treating source used to formulate his or her opinion, the consistency of the treating source's opinion with the record "as a whole," whether the treating source is a specialist in the subject matter of her opinion, and any other factors that Plaintiff may present. See id. While Plaintiff saw Dr. Hayes and Mr. Carpenter frequently, Plaintiff never saw Mr. Carpenter during the relevant time period, and Dr. Hayes's treatment notes do not include findings that would support her opinion. In addition, other medical evidence, such as Dr. Murrell's report, is inconsistent with the opinions of Dr. Hayes and Mr. Carpenter. *See Goff*, **421 F.3d at 790-791.**

Plaintiff argues that the ALJ erred by giving Dr. Murrell's opinion more weight than the opinions of Dr. Hayes and Mr. Carpenter. However, because Mr. Carpenter was not an acceptable medical source, the ALJ could properly give Dr. Murrell's opinion more weight than his opinion. *See Cronkhite v. Sullivan*, **935 F.2d 133, 134 (8th Cir. 1991)**; SSR 06- 03p. Additionally, the ALJ could also properly give Dr. Murrell's opinion more weight than Dr. Hayes's opinion due to the lack of detail in Dr. Hayes's treatment notes and the inconsistency of Dr. Hayes's opinion with other evidence. *See Estes v. Barnhart*, **275 F. 3d 722, 725 (8th Cir. 2002).** Substantial evidence supports the ALJ's analysis of the medical opinions of record.

The Social Security Regulations provide a five-step sequential evaluation for determining disability under the Social Security Act. See 20 C.F.R. § 416.920. If a finding of not disabled is

made at any step in the evaluation process, the regulations provide that there is no need to proceed further in the evaluation process. See 20 C.F.R. § 416.920(a); *see also Warren v. Shalala*, **29 F.3d 1287, 1290 (8th Cir. 1994)**. At step two of the sequential evaluation process, the claimant bears the burden of establishing that she has a severe impairment that significantly limits her physical or mental ability to do basic work activities. *See Williams v. Sullivan*, **960 F.2d 86, 88 (8th Cir. 1992).** If the claimant fails to show that she has a severe impairment, the analysis ends and the claimant is found to be "not disabled." *Id.* Because the ALJ determined that Plaintiff was not disabled at step two, there was no need for him to proceed to the subsequent steps of the sequential evaluation process. Substantial evidence supports the ALJ's determination.

WHEREFORE, for the reasons stated herein, the Commissioner's decision is affirmed.

s/ Gary A. Fenner<br>
Gary A. Fenner, Judge<br>
United States District Court

DATED:  April 12, 2010